UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| San Antonio Firefighters' Association, Local 624 | § § § | |
| *Plaintiff*, | § § | Civil No. SA-18-CV-00745-XR |
| v. | § § | |
| The City of San Antonio, et al. | § § | |
| *Defendants*. | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY'S SUMMARY JUDGMENT MOTION

Plaintiff San Antonio Firefighters' Association, Local 624 files this Response in

Opposition to the Defendant's Motion for Summary Judgment, Dkt. #31. Subject to a

ruling on Defendant's Motion for Protection from a 30(b)(6) deposition, Dkt. #38, and

subject to Plaintiff's Motion to Continue Submission of the Summary Judgment Motion,

Plaintiff requests the Court deny the motion.[1] Plaintiff also requests oral submission of

the Defendant's Motion for Summary Judgment, as the Court previously indicated it

---

[1] Plaintiff Local 624 previously filed an **unopposed** motion to extend the submission date of the City's summary judgment motion "until Plaintiff receives the City's document production; Local 624 can review that production and adequately notice a corporative representative deposition with proper areas of inquiry; and Plaintiff can receive the transcript of the deposition in time to use it in opposition to the City's summary judgment motion. The City does not oppose this briefing schedule for its motion." At present, the City has resisted that 30(b)(6) deposition and has asserted Plaintiff must respond to the summary judgment motion based on the City's document production alone.

would grant the parties,[2] when the Opposition is fully briefed and supported by a 30(b)(6) deposition of the City. Finally, this Response includes objections to some of Defendant's summary judgment proof.

**Procedural Background of the Case.**

1.  This is a suit by a firefighters' labor union against Defendant the City of San Antonio, Texas. The suit arises from Local 624's efforts regarding municipal ballot initiatives in the City of San Antonio and conduct by each of the individual official capacity defendants that impeded Local 624's ballot initiative drive. Local 624 sues under 42 U.S.C. § 1983 for the resulting violations of its rights under the First and Fourteenth Amendments. Dkt. #1 at ¶¶ 48–63. Local 624 has also asserted claims under the Texas Constitution to obtain redress for the violations of its free speech rights. Dkt. #1 at ¶¶ 65–68. As a remedy for these free speech violations, Local 624 requests federal Declaratory Judgment Act relief, injunctive relief, and an award of attorney's fees under Section 1988. Dkt. #1 at ¶¶ 69–74.

2.  Defendant City seeks summary judgment on three grounds. First, it claims that its "Free Speech Areas" policy and "Senior Center Policy" do not violate free speech protections in state and federal constitutions as a matter of law; Second, it says that Plaintiff Local 624's retaliation claim fails as a matter of undisputed fact; Third, it argues

---

[2] Defendant too has requested oral argument on the motion. *See* Defendant's Motion for Summary Judgment at 1.

that the City's policies are not unconstitutionally vague as a matter of law. *See* Defendant's Motion for Summary Judgment at 1.

3. In support of its motion, the City has included as summary judgment proof a Declaration of Dale McNeill, Assistant Director for Public Services, San Antonio Public Library (Dkt. #31-1); a Declaration of Cheryl Sheehan, Public Services Administrator, San Antonio Public Library (Dkt. #31-2); a Declaration of Jessica Dovalina, Assistant Director, Department of Human Services (Dkt. #31-3); and copies of two City ordinances. Plaintiff Local 624 objects to some of the City's summary judgment proof, as follows:

3.1    Local 624 objects to certain statements made in the declarations of Dale McNeill and Jessica Dovalina since they are not competent evidence to support a motion for summary judgment. The same rules of evidence apply to summary judgment motions as to trial evidence, *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 504 (5th Cir. 1999), and the competence of witnesses and testimony in a summary judgment motion practice is subject to Rule 56(c)(4): affidavits or declarations used in support of or opposition to a summary judgment motion be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

**Objections to Declaration of Dale McNeill**

3.2    Local 624 objects to several statements made in McNeill's declaration (Dkt. #31-1) that are not based on personal knowledge, are conclusory, and are hearsay not subject to any exception. Fed. R. Evid. 801(c).

3.3    Local 624 specifically objects to paragraph 6 as conclusory. McNeill states:

> "[t]he policy was not based on any disagreement with the content of any person or group's speech and is designed to apply to all person regardless of message or viewpoint."

Conclusory statements in an affidavit or declaration do not provide facts that will support or counter a summary judgment motion and testimony based on conjecture alone is incompetent. *See Lechuga v. S. Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992). Summary judgment evidence must be based on personal knowledge and cannot be conclusory. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). In this case, the City has the burden to present evidence of a valid basis for its policies within the legal construct of the First Amendment. The City has improperly sought to establish an ultimate conclusion of law through McNeill's unsupported declaration. Local 624 requests the Court sustain this objection and this portion of the declaration should be struck from the City's summary judgment evidence.

3.4    Likewise, paragraph 7 simply makes a conclusory statement regarding library patrons without providing any basis for such a statement.  In paragraph 7, McNeill says:

> "Nearly every person who visits the City's library branches does so in order to use library services, like borrowing a book or movie, attending a library

education program, using a library meeting room for a civic organization meeting, or accessing public computers and printers. Because our patrons are as diverse as the San Antonio community, it is important that library facilities are welcoming, accessible, and safe to people of all ages and mobility levels."

Again, caselaw makes plain that declarations may not provide unsupported conclusory facts. Therefore, Local 624 requests the Court strike paragraph 7 from the City's summary judgment evidence.

3.5    McNeill's declaration in paragraph 8 contains a conclusory legal opinion when he asserts that "[l]ibrary walkways are therefore not the same as public sidewalks along the City's roads and streets." Summary judgment declarations cannot be used to advance legal conclusions. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), opinion corrected on denial of reconsideration, 70 F.3d 26 (5th Cir. 1995). Accordingly, Local 624 asks this Court to strike McNeill's legal conclusion from his declaration in paragraph 8.

3.6    Local 624 objects to paragraphs 9 and 12 of McNeill's declaration as inadmissible hearsay not subject to any exception. In paragraph 9, the witness declares:

"When selecting each free speech areas, the Public Services Administrators directed branch managers to make sure to pick an area that did not interfere with access to the library and would be large enough for at least two or three people to stop and gather without obstructing any walkways or entrances."

McNeill is not a Public Services Administrator and does not establish the basis for his knowledge of these directives. He simply offers the administrators directives as evidence of the truth of the matter asserted.

Similarly, paragraph 12 establishes McNeill was not personally involved with "Union representatives" but he purports to offer testimony of hearsay assertions from City library branch managers. Yet declarations in support of summary judgment evidence must be based on the personal knowledge of the declarant; hearsay is not admissible as summary judgment evidence. Fed. R. Evid. 802; *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)(per curiam). McNeill's statements are inadmissible as they are not based on his personal knowledge and proffers conversations between third parties. Local 624 requests this Court strike the referenced parts of paragraph 9 and the entirety of paragraph 12 as incompetent summary judgment proof.

**Objections to Declaration of Jessica Dovalina**

3.7   Dovalina states she is the Assistant Director for the San Antonio Department of Human Services but does not indicate how long or on what dates she has held that position.

3.8   Local 624 objects to paragraph 6 of Dovalina's declaration in which she asserts how the Senior Center Political Activity Policy "came about" and why the policy was adopted. Declarations submitted in support of summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987). Dovalina's declaration provides no competent foundation for the assertions made

in paragraph 6. Indeed, Dovalina does not establish if she was present during or part of the adoption of the Senior Center Political Activity Policy.

3.9    Local 624 also objects to paragraph 11 of Dovalina's declaration and specifically its conclusion of what is a "public sidewalk." Affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgment. *McCallum Highlands, Ltd.*, 66 F.3d at 92. The issue of what is considered a public or nonpublic forum is the very heart of the City's Motion and cannot be established based on an unfounded conclusory statement from a witness. Accordingly, Local 624 requests the Court strike this portion of the paragraph 11 of Dovalina's declaration.

3.10    Likewise, paragraph 13 of that declaration proffers a conclusory legal statement about the pathways and walkways surrounding a City building. Specifically, Dovalina opines "[t]hese walkways are not public thoroughfares to any location other than the Northeast Senior Center." Local 624 objects to Dovalina's statement as conclusory and providing an unsupported conclusion of law. Plaintiff requests the Court strike her statement from the City's summary judgment evidence.

3.11    Local 624 objects to paragraphs 17 and 19 of Dovalina's declaration as containing hearsay not subject to any exception. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008) (holding that affidavit that contained hearsay was not based on personal knowledge, and, under summary judgment procedures, was not admissible). More specifically, paragraph 17 of Dovalina's declaration proffers

testimony from an unidentified branch manager, while paragraph 19 recounts what the witness was told on a phone call from a senior center manager. Both statements are hearsay not subject to any exception. Accordingly, Local 624 asks this Court to strike paragraphs 17 and 19 from Dovalina's declaration as inadmissible hearsay.

**Standard and Scope of Review that applies to the City's motion.**

4. The standard and scope of review for Rule 56 motions is well-known to this Court. In making a summary judgment determination, the Court views the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motion and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

**Argument and authority in opposition to summary judgment.**

5. Again, the City seeks summary judgment on three grounds. Its first claim is that its "Free Speech Areas" policy and "Senior Center Policy" do not violate free speech protections in state and federal constitutions as a matter of law. In support of that claim, it has advanced three sub issues: (1) The exterior grounds of the City's libraries and senior centers are non-public forums; (2) The City's policies are reasonable in light of the intended purposes of the City's libraries and senior centers; and (3) City policies do not discriminate on the basis of the speaker's viewpoint. *See* Defendant's Motion for Summary Judgment at 6.

5.1 By asserting the City's libraries and senior centers are nonpublic forums, the City seeks to avoid a strict scrutiny standard of review applicable under the doctrinal

"forum analysis." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800

(1985) (explaining the extent to which government can control access to its property

depends on the nature of the relevant forum). For example, streets and parks "'have

immemorially been held in trust for the use of the public, and, time out of mind, have

been used for purposes of assembly, communicating thoughts between citizens, and

discussing public questions.' In these quintessential public forums, the government may

not prohibit all communicative activity. For the state to enforce a content-based exclusion

it must show that its regulation is necessary to serve a compelling state interest and that it

is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,

460 U.S. 37, 45 (1983) (citing *Carey v. Brown*, 447 U.S. 455, 461, (1980)). There are other

examples: a university meeting facility; a school board meeting; or a municipal theater.

These are examples of public property that the government has opened for use by the

public as a place for expressive activity, or so-called "public forum created by government

designation." In such circumstances, the federal constitution forbids certain exclusions

from a forum generally open to the public even if it was not required to create the forum

in the first place. *Perry Educ. Ass'n*, 460 U.S. at 45 (citing *Widmar v. Vincent*, 454 U.S. 263

(1981) and other internal citations omitted).

But "forum analysis is not completed merely by identifying the government

property at issue. Rather, in defining the forum [courts] have focused on the access

sought by the speaker." *Cornelius*, 473 U.S. at 801.

Finally, in contrast to public forums, the government can restrict access to nonpublic forums so long as its restrictions are reasonable and are not an effort to suppress disfavored speech. *E.g., Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974).

5.2    In most cases, the issue presented in the particular forum analysis is the line between designated and limited public forums. The Fifth Circuit has said that in distinguishing between the two types of forums, precedent brings focus to two factors: (1) the government's intent with respect to the forum, and (2) the nature of the forum and its compatibility with the speech at issue. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758–59 (5th Cir. 2010).

5.3    The City's claim that the "exterior grounds" of its libraries and senior centers are non-public forums is not well-taken. Indeed, its reference to "exterior grounds" suggests that the City's position is somewhat nuanced; in any event, the Fifth Circuit has suggested reviewing courts "push aside 'self-serving statements'" regarding the forum and its purpose and look instead to "objective evidence leavened by common sense." *Fairchild*, 597 F.3d 747, 759 (5th Cir. 2010).

5.4    Libraries, with respect to First Amendment rights, have been analyzed as traditional public forums, limited public forum, and designated public forums. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1128–29 (10th Cir. 2012) (finding library to be designated public forum for purposes of First Amendment activity); *Deans v. Las Vegas Clark County Library Dist.,* 220 F. Supp. 3d 1058, 1062 (D. Nev. 2016) (analyzing library plaza as traditional public forum); *Sund v. City of Wichita Falls, Tex.*, 121 F. Supp. 2d 530, 548

(N.D. Tex. 2000) (analyzing Wichita Falls Public Library as a limited public forum, "like all other public libraries"); *Hawkins v. City & County of Denver*, 170 F.3d 1281, 1286–87 (10th Cir. 1999)("Examples of designated public fora include: state university meeting facilities expressly made available for use by students, school board meetings open to the public by state statute, advertising space in state-owned subway and commuter rail stations, a city owned and operated senior center sponsoring lectures, and public libraries").

And notably, in the *Doe v. City of Albuquerque* decision, the court observed that "[i]n a designated public forum, the government may only impose content-neutral time, place, and manner restrictions that: (a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication." 667 F.3d at 1130–31. This is plainly a stricter standard that the City seeks to satisfy by its summary judgment motion.

Meanwhile in *Sund v. City of Wichita Falls*, the court stated that the government, in the context of the library as a limited public forum, could not restrict solely on the basis of content, "unless the City can demonstrate that the restriction is necessary to achieve a compelling government interest and there are no less restrictive alternatives for achieving that interest." 121 F. Supp. 2d at 548.

Plaintiff contends the City libraries are limited public forums or designated public forums with a stricter standard of review. The City is not entitled to summary judgment

as a matter of law by relying solely on a reasonableness standard applicable to nonpublic forums.

5.5    To be sure, the City cites to several cases involving post offices. *See* Defendant's Motion for Summary Judgment at 9. But in each of these cases, as part of its analysis in deciding whether the walkway to the post office is a public forum, the courts stress the decidedly business nature of a post office. Most patrons of the post office are there solely for a transactional purpose: to deposit and pay for mail services or pick up items that have been mailed to them. As the Supreme Court said in *United States v. Kokinda*, 497 U.S. 720, 728 (1990), "the postal sidewalk was constructed solely to assist postal patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city." Public libraries, in contrast, serve a variety of non-business functions for the community and it is within the commonsense knowledge of this Court that those functions can facilitate the "daily commerce and life of the neighborhood or city." Indeed, the City's libraries presently provide free learning opportunities on the basics of using a computer to find information; "connect with friends and family" through social media; and use the internet to find a job and complete online applications.[3] At the same time, it also promotes book discussions and "meet-and-greet" events with artists and journalists.

_____

[3] https://www.mysapl.org/Events-News/News-Media-Center/News/ArtMID/17281/ArticleID/15705/Learn-at-SAPL-Launches-Free-Digital-inclusion-Certificate-Program-Available-to-All-San-Antonio-Residents

These events are moderated, with book signings and book sales.[4] Such worthwhile events and programs, in the context of summary judgment, preclude ruling that the City libraries are not designated public forums, or limited public forums.

5.6    Moreover, the City concedes in its motion (*see* at 10) that it desires to and does make some library branches available to serve as polling places for early and election-day voting. This is also a purpose patently inconsistent with the concept of nonpublic forums.

5.7    In sum, the City is not entitled to summary judgment because its libraries are not nonpublic forums but are limited public forums or designated public forums. In fact, the Free Speech Areas vary for different locations based on the City specific designations. *See* Appendix at Tab 3, COSA000598–604. As such, the City's Free Speech policies are subject to a stricter standard of review than the standard of reasonable made the core of its summary judgment motion. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 345 (5th Cir. 2001) (observing the government's power to restrict speakers' access to designated public forums is subject to the same constitutional constraints that apply to traditional public forums).

5.8    The City says less about its senior centers, except to assert its exterior grounds are nonpublic forums since the exterior grounds are used to park cars and enter

---

[4] https://www.mysapl.org/Events-News/News-Media-Center/News/ArtMID/17281/ArticleID/15657/Renowned-Artist-Jesse-Trevi241o-To-Visit-the-Central-Library-to-Discuss-His-Life-and-Work

the centers. For proof, it cites to the declaration of the Assistant Director for the San Antonio Department of Human Services, Dovalina, who says that at the Northeast Senior Center, the purpose of the walkways and pathways is to facilitate safe and efficient access. She adds the building and the exterior grounds of the Northeast Senior Center are "designed with accessibility and mobility in mind" and it is important to keep walkways clear of any obstructions. Dkt. 31-3 at para. 13–15. This self-interested testimony nevertheless does not inform the Court of facts relevant to the forum analysis. It alone is no basis on which to grant summary judgment under a threshold forum analysis.

6.    The City is not entitled to summary judgment by asserting its "Free Speech Areas" policy and "Senior Center Policy" are reasonable in light of the intended purposes of the City's libraries and senior centers.

6.1    First, as noted in section 5, the less strict "reasonableness" standard will not apply unless the City libraries and senior centers are nonpublic forums. This proposition is not, however, established as a matter of law. On that basis alone, summary judgment is inappropriate.

6.2    Further, the *Deans* decision, like the case here, involves the outside area of the library. Deans is a voter registrant and travels "nationwide" to circulate petitions and tell people how to register to vote. *Deans,* 220 F. Supp. 3d at 1060. On one occasion he went to a plaza outside the entrance to a public library in Las Vegas to engage in his petition and informational activities. After several minutes, a library assistant branch manager came outside and told Deans his activity was restricted to a small, designated

area about 75 feet from the entrance. Deans refused to comply, asserting his First Amendment right to petition without limiting himself to the designated area. Library staff then summoned law enforcement, and Deans was issued a trespass notice. *Id.* at 1061.

The district court considered whether to issue injunctive relief in Dean's favor and against the library district. The court determined Dean was likely to prevail on the merits. The library plaza was like a public sidewalk with free access to the public. Further, the defendant library district had conceded that the library plaza was used for limited petitioning and voter registration and had been used for two public events "both conducted by the library." *Id.* at 1062. The district court also noted another precedent holding that "libraries are public spaces. 'Characterizing the area as a public forum is consistent with the role of a library as a mighty resource in the free marketplace of ideas. It is specially dedicated to broad dissemination of ideas. It is a forum for silent speech.'" *Id.* at 1063.

6.3    The City gives great weight to the "quiet" contemplation of the library, suggesting oral First Amendment activities are "antithetical to the nature" of a library. *See* Defendant's Motion for Summary Judgment at 11. Coupling this claim with the City's assertion of a nonpublic forum, it says it could "prohibit petition solicitation altogether on library property to further" the quiet, "efficient functioning of the library." *Id.*  This appeal to the stereotype of the "Shh! librarian" just isn't so anymore. Indeed, on May 4,

the City's libraries celebrated Star Wars Day.[5] It had "selfies with Yoda, lightsaber duels (kid and adult tournaments), droid races, and a scavenger hunt in celebration of Free Comic Book Day." Another library branch showed the Phantom Menace movie. Another branch had "cosplay fun, Droid races, photo ops, vintage toy displays including a Millennium Falcon and a Katana Fleet, and DIY Star Wars crafting. All ages are welcome."[6]

6.4     Setting aside this evidence contrary to the quiet, contemplative acquisition of knowledge, Motion at 11, the City argues that because it could prohibit petition solicitation "altogether," whatever Free Speech area it does give is de facto and "necessarily reasonable." This argument fails in fact and in law.

6.5     Likewise, the City's "Senior Center Policy" cannot be affirmed by summary judgment simply because the City wants to protect those in its centers from "political pressure" and the "appearance of bias or favoritism." Overwhelming precedent reflects a judicial recognition of the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Our seniors should not be excluded from that debate.

---

[5] "Star Wars Day, May 4, celebrates George Lucas' Star Wars.  * * * The date was chosen for the pun on the catchphrase 'May the Force be with you' as "May the Fourth be with you." https://en.wikipedia.org/wiki/Star_Wars_Day

[6] https://www.mysapl.org/Events-News/News-Media-Center/News/ArtMID/17281/ArticleID/15624/Lightsaber-Duel-Droid-Races-and-Selfies-with-Yoda

Finally, the City does not articulate any danger of "political pressure," bias, or favoritism from Plaintiff's specific activities to collect petition signatures.

7. The City is not entitled to summary judgment on its retaliation claim.

7.1    First, the City claims that no adverse action was taken that would chill Local 624's engagement in protected activities such as speech and petitioning. It is undisputed on the City's summary judgment record that the police were called, trespass warnings were given, and arrest was threatened if the union's petition solicitors did not move. *See* Defendant's Motion for Summary Judgment at 13. The City says this is not enough, citing *Matherne v. Larpenter*, 216 F.3d 1079 (5th Cir. 2000) (unpublished). But that case is of limited support to the City. The Fifth Circuit there held adverse actions such as arrests or indictments may constitute actionable First Amendment violations, but "retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable ...." *Id.* at *3. The panel again emphasized that the plaintiff in its case was "understandably miffed when she was publicly called a liar and accused of filing a false report," but "defamation or criticism followed by nothing more produces nothing actionable under the First Amendment." The facts here, as presently known to the Court on this summary judgment record, involve something else.[7]

---

[7] Local 624 has sought a corporate representative deposition that included, as an area of inquiry, the union's "'petition-gathering activities' as set out in the City's summary judgment motion and exhibits referenced there." The City has moved to quash that deposition.

7.2     Second, to the extent the City asserts that Local 624's retaliation claim must fail because the union successfully collected the necessary number of signatures, it cites no cases holding the Plaintiff's petition solicitors surrender their First Amendment rights upon their petition success. For example, if an arrest is made as an adverse action in connection with petition activities, it is irrelevant that the petition was successful notwithstanding that adverse action.

7.3     Third, as for causal motive, the City brushes off the fact that the City's Mayor "publicly expressed his strong disapproval" of the merits of the Plaintiff's proposed ballot measures and says it is "no evidence" that the City retaliated against the Plaintiff. *See* Defendant's Motion for Summary Judgment at 13. But in the summary judgment setting, the inferences are indulged in Local 624's favor, not the City's. The fact that the written policies may have pre-existed Local 624's petition activities at issue does not preclude improper motive in enforcement of those policies. Moreover, there is summary judgment evidence from the City's document production demonstrating specific efforts it undertook because of Local 624's petition activities, including the posting of unique signage. *See* Appendix at Tab 1, COSA000145–146. Likewise, there is evidence of changes to the City policy, including changes to the Free Speech Areas. *See* Appendix at Tab 2, COSA000316–317.

8.     The City is not entitled to summary judgment on its "fair notice" claim.

8.1     The City says its challenged policies provide fair notice of the conduct they proscribe and objective guidelines for enforcement and are therefore not impermissibly

vague. But the summary judgment evidence shows the City changed its signage, and changed Free Speech Zones, in response to Local 624's First Amendment activities. *See* Appendix at Tabs 1 and 2. This is direct evidence contrary to the City's claim that "neither the library nor senior center policy invites subjective interpretation and policymaking on the part of enforcing officials." *See* Defendant's Motion for Summary Judgment at 15.

9. Plaintiff's state law claims are to be treated like the federal claims it has asserted, says the City. *See* Defendant's Motion for Summary Judgment at 15–16. Because Local 624's federal claims should survive summary judgment, the state law claims should continue as well.

### Conclusion and Prayer

10. Accordingly, Plaintiff requests the Court deny the Defendant's Motion for Summary Judgment. Plaintiff requests all other relief consistent with the arguments and representations in this Opposition.

Respectfully submitted,

FELDMAN & FELDMAN P.C.

By:
      Cris D. Feldman
      Attorney-in-Charge
State Bar No. 24012613
3355 W. Alabama St., Suite 1220
Houston, TX 77098
713.986.9471
*cris.feldman@feldman.law*

Attorneys for Plaintiff
San Antonio Firefighters' Association
Local 624

Of counsel:

FELDMAN & FELDMAN P.C.

*s/ George W. Vie III*
George W. Vie III
State Bar No. 20579310
*george.vie@feldman.law*

David M. Feldman
State Bar No. 06886700
*david.feldman@feldman.law*
William X. King
State Bar No. 24072496
*will.king@feldman.law*
3355 West Alabama Street, Suite 1220
Houston, Texas 77098
713.986.9471

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that service on counsel for all parties will be accomplished through CM/ECF.

*s/ George W. Vie III*
George W. Vie III