IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SAN ANTONIO FIREFIGHTERS' ASSOCIATION, LOCAL 624,<br>    *Plaintiff*<br><br>v.<br><br>THE CITY OF SAN ANTONIO, TEXAS,<br>    *Defendant* | NO. 5:18-CV-00745-XR |

# Defendant's Reply in Support of Motion for Summary Judgment

To the Honorable Court:

Defendant the City of San Antonio, Texas files this reply in support of its motion for summary judgment on all claims brought by Plaintiff San Antonio Firefighters' Association, Local 624.

### The relevant facts are undisputed.

The City's summary judgment evidence establishes, and the Union's evidence does not dispute, these essential points:

**The nature of the forum:** The exterior grounds of the City's comprehensive senior centers and library branches are intended for parking for patrons of those facilities, with walkways designed to facilitate safe passage between the building entrances and parking lots. Other than the designated "free speech areas" at each library branch, the City has not opened the exterior grounds of these facilities for public discourse, nor have these areas historically or traditionally been used for such purposes.

**The City's policies:** The public may solicit signatures for petitions within each library branch's designated "free speech area." The City does not allow petitioning elsewhere on the grounds of its library branches. This policy was adopted to protect "the efficient functioning of the library." ([MSJ Exhibit 1-1](#))

The City does not allow the solicitation of petition signatures outside its senior centers. This policy was adopted "for the protection of centers from political pressure, to prohibit the use of City

of San Antonio resources for political purposes and to avoid the appearance of bias or favoritism." ([MSJ Exhibit 3-2](MSJ Exhibit 3-2))

The library and senior center policies apply equally to all persons—that is, they make no distinctions based on speakers' viewpoints or the content of their messages.

These undisputed facts establish that the City's policies do not violate the First Amendment, because the City's property is a "nonpublic forum" and its policies are reasonable and nondiscriminatory. All of the Union's claims fail as a matter of law.

**The exterior grounds of the libraries and senior center are the relevant forums.**

The Union criticizes the City's description of the forum at issue as the "exterior grounds" of the City's libraries and senior centers. ([ECF No. 39 at 10](ECF No. 39 at 10)) But the Union complains of petitioning activities exclusively *outside* the libraries and senior centers. ([ECF No. 26 ¶ 12](ECF No. 26 ¶ 12)) And the undisputed summary judgment evidence likewise shows the Union solicited signatures only *outside* these buildings, not inside. The proper forum to consider is therefore the exterior grounds of these buildings.

"In cases in which limited access is sought, our cases have taken a more tailored approach to ascertaining the perimeters of a forum within the confines of the government property." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, [473 U.S. 788](473 U.S. 788), 801 (1985). The relevant "forum" for analysis depends on the access sought by the speaker, *id.* at 801, and thus can be something as discrete as a letterbox,[1] a school's internal mail system,[2] or the advertising space in a city bus.[3]

When, as here, the speaker complains of a denial of access to the exterior grounds of a building, then the exterior grounds are the proper forum for First Amendment analysis. *See, e.g.*, *United States v. Grace*, [461 U.S. 171](461 U.S. 171) (1983) (considering whether the exterior grounds of the U.S. Supreme Court building are a public forum). The Fifth Circuit, for example, has held that forum

---

[1] *U. S. Postal Serv. v. Council of Greenburgh Civic Associations*, [453 U.S. 114](453 U.S. 114), 128–29 (1981).

[2] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, [460 U.S. 37](460 U.S. 37), 46–47 (1983).

[3] *Lehman v. City of Shaker Heights*, [418 U.S. 298](418 U.S. 298), 304 (1974).

analysis for challenged outdoor activity on a university campus must focus on the exterior grounds at issue, not the entire campus:

> We are not called upon in this case to decide whether the University of Texas at Austin has opened its entire campus to unfettered expression by the general public. Instead, our task is simply to determine whether outdoor open areas of the University's campus, accessible to students generally, have been designated as a forum for student expression.

*Justice For All v. Faulkner*, 410 F.3d 760 (5th Cir. 2005); *see also Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) ("The undisputed facts show that the *outdoor grounds* of the campus such as the sidewalks and plazas are designated public fora for the speech of university students." (emphasis added)).

Some services offered inside a public library may indeed be public forums: access to the library's collection of books and other circulation materials; use of meeting rooms or other community resources; and attendance at author signings or other book-related events. *See, e.g.*, *Doe v. City of Albuquerque*, 667 F.3d 1111, 1130 (10th Cir. 2012) (evaluating a city policy banning registered sex offenders from entering or using a public library and concluding that a library is a public forum); *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547–49 (N.D. Tex. 2000) (evaluating a city resolution removing certain children's books from circulation and finding that a library's collection is a limited public forum). But the Union does not, by this suit, complain of denial of access to those forums. The Union instead claims a First Amendment right to stand outside the library's doors and solicit persons entering or leaving the building to sign a petition. *See, e.g.*, (ECF No. 26 ¶ 45) (alleging that "The plazas and walkways in front of the City's libraries are traditional public fora."). The proper forum for analysis here is therefore the exterior grounds of the library, and the nature and purpose of that forum is different from the core functions of the library. *See, e.g.*, *Gay Guardian Newspaper v. Ohoopee Reg'l Library Sys.*, 235 F. Supp. 2d 1362, 1369 (S.D. Ga. 2002), *aff'd* 90 Fed. Appx. 386 (11th Cir. 2003) (holding that a public library's entrance lobby was a nonpublic forum, even though the library itself was a limited public forum.); *see also Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1262 (3d Cir. 1992) ("[A]s a limited public forum, the Library is obligated

only to permit the public to exercise rights that are consistent with the nature of the Library and consistent with the government's intent in designating the Library as a public forum. Other activities need not be tolerated." (footnote omitted)).

**The exterior grounds of the library branches and senior center are nonpublic forums.**

The Union cites one case where the exterior grounds of a library were found to be a public forum: *Deans v. Las Vegas Clark County Library Dist.*, 220 F. Supp. 3d 1058, 1062 (D. Nev. 2016). But the facts in that case regarding the nature of that forum highlight clear distinctions from this one. The forum in *Deans* was a 5000-square-foot "plaza" that was used as a "thoroughfare" for non-library pedestrians and also hosted public events. *Id.* at 1062–63. Here, none of the library branches where the Union sought to petition have any similar gathering space of comparable size to the plaza in *Deans* (MSJ Exhibit 2); the outdoor spaces surrounding these branches (and the Northeast Senior Center as well) instead consist of surface parking lots with walkways connecting the parking lots to the entrances to the buildings. The undisputed evidence shows that these walkways are not public "thoroughfares," nor is there any evidence that they are used for any public events. (MSJ Exhibit 1 ¶ 8; MSJ Exhibit 3 ¶ 13)

Federal caselaw uniformly holds that walkways connecting parking lots to public buildings such as these are "nonpublic forums." *See* (ECF No. 31 at 9–10) These cases are not limited, as the Union contends, only to walkways outside post offices. *See, e.g.*, *Hawkins v. City & County of Denver*, 170 F.3d 1281, 1284 (10th Cir. 1999) (pedestrian walkway at Denver Performing Arts Center). Nor do these cases turn on whether commercial transactions are conducted inside the building or not. Rather, they turn on the purpose to which the particular walkway is dedicated—if, unlike a public sidewalk, the walkway is used only for passage between a parking lot and a front door, then it is a nonpublic forum. *United States v. Kokinda*, 497 U.S. 720, 727–28 (1990) (plurality opinion).[4]

---

[4] The Union's assertion (ECF No. 39 at 12) that the business of a post office is purely commercial is also wrong, as the U.S. Supreme Court has long emphasized the close connection between the mail and the exercise of core First Amendment freedoms: 'The United States may give up the post-office when it sees fit, but while it carries it on the use of the mails is almost as much a part of free speech as the right to use our tongues . . . ." *Lamont v. Postmaster Gen.*, 381 U.S. 301, 305

The Union also asserts that using a library branch as a polling place is "patently inconsistent with the concept of nonpublic forums." (ECF No. 39 at 13). But the U.S. Supreme Court has held that a polling place is a "nonpublic forum." *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1886 (2018). There is thus nothing inconsistent with the City both allowing a library branch to serve as a polling site and enforcing its free-speech-area policy at that library branch.

As to the senior centers, the City's summary judgment evidence does, contrary to the Union's argument, "inform the Court of facts relevant to the forum analysis." (ECF No. 39 at 14). The City submitted affidavit testimony describing the nature and purpose of the walkways outside the senior center, including an aerial photograph of the site. (MSJ Exhibit 3) The Union has offered nothing to call into question the dispositive evidence that "[t]he purpose of the walkways and pathways is to facilitate safe and efficient access to Northeast Senior Center. These walkways are not public thoroughfares to any location other than the Northeast Senior Center." (MSJ Exhibit 3 ¶ 13). As a matter of law, therefore, the exterior grounds of the Northeast Senior Center are a nonpublic forum.

### Even if the exterior grounds were limited public forums, the City's policies would still be reviewed for reasonableness, not strict scrutiny.

The Union contends that "the City libraries are limited public forums or designated public forums with a stricter standard of review." (ECF No. 39 at 11) But the Union's argument overlooks the fact that limited public forums are not subject to strict scrutiny. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) ("[T]he Supreme Court now clearly distinguishes designated public forums subject to strict scrutiny from limited public forums that are not . . . ."). Limited public forums are instead subject to the same reasonableness standard of review as nonpublic forums. *See id.* at 347 ("As with limited public forums, the government can restrict access to a nonpublic forum as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view." (quotations omitted)); *see also Fairchild v. Liberty Indep. Sch.*

---

(1965) (quoting *United States ex rel. Milwaukee Social Democratic Pub. Co. v. Burleson*, 255 U.S. 407, 437 (1921) (Homes, J., dissenting)).

*Dist.*, 597 F.3d 747, 758 (5th Cir. 2010) ("The government may restrict speech in these limited public forums, as long as the regulation (1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum." (footnotes and quotations omitted)). Thus, even if the exterior grounds of the City's library branches and senior centers were "limited public forums," the City's policies must be upheld as long as they are reasonable and nondiscriminatory.

There is no fact issue that could support a conclusion that the exterior grounds of the City's libraries and senior centers are "designated public forum," as the Union alternatively argues. "The government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by *intentionally opening a nontraditional public forum for public discourse*." *Cornelius*, 473 U.S. at 802 (emphasis added). The Union has offered no evidence at all to suggest that the City has "intentionally" opened the parking lots and walkways of its library branches and comprehensive senior centers for "public discourse." The undisputed evidence instead shows that these parking lots and walkways have been devoted exclusively to the convenient and safe access of patrons of these facilities. (MSJ Exhibit 1 ¶ 8); (MSJ Exhibit 3 ¶ 15)

**The City's policies are reasonable and nondiscriminatory.**

The Union turns again to the *Deans* decision to argue that the City's free-speech-area policy is not reasonable. (ECF No. 39 at 14–15) In *Deans*, however, the library did not follow its officially adopted free-speech-area policy, but instead attempted to restrict Deans to an area that was farther away from the library entrance. 220 F. Supp. 3d at 1064. The preliminary injunction issued by the Court required Deans to confine his petitioning activities to the official free-speech area of the library's plaza—precisely what the City's library staff did here with respect to the Union's petitioners. *See id.* at 1065 ("Both Deans's right to freely petition and the District's interest in protecting patrons' access to the entrance can be temporarily satisfied by allowing Deans to conduct his activities in the area described in the District's officially filed 'petition signing zones' document."). *Deans* thus supports, rather than undermines, the proposition that library policy may validly restrict petition solicitors to designated "free-speech areas."

REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT												Page 6

The City's restrictions on the uses of its property "need only be *reasonable*; [they] need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808 (emphasis in original). The Union has no evidence to contradict the City's summary judgment evidence that the policies at issue are consistent with the City's legitimate interest in maintaining its property for the dedicated use as a library or senior center.

The City library's exterior-grounds policy is a reasonable restriction to further the City's legitimate interest in "the efficient functioning of the library." (MSJ Exhibit 1-1) The Union quibbles with the City's description of a library's function as a place of "quiet" contemplation. (ECF No. 39 at 15–16) But the City was quoting a U.S. Supreme Court opinion for this proposition (ECF No. 31 at 11), and the Union offers no caselaw of any kind to contradict it or to otherwise call into question the reasonableness of the City's policy.

The Union disputes that the City can lawfully adopt a policy protecting senior citizens from "political pressure" or the "appearance of bias or favoritism" at senior centers. (ECF No. 39 at 16) The Union cites only *New York Times v Sullivan*, 376 U.S. 254, 270 (1964), a defamation case establishing the "actual malice" standard that has nothing to do with the reasonableness of policies regulating the uses of public property. On that issue and contrary to the Union's position, the U.S. Supreme Court's "decisions have long recognized that the government may impose some content-based restrictions on speech in nonpublic forums, *including restrictions that exclude political advocates and forms of political advocacy.*" *Minnesota Voters Alliance*, 138 S. Ct. at 1885–86 (emphasis added).

**The Union's retaliation claim fails as a matter of law.**

First, the Fifth Circuit has made clear that a threshold requirement for a First Amendment retaliation claim is an "adverse action" suffered by the Plaintiff of sufficient gravity to trigger a constitutional violation. *Matherne v. Larpenter*, 216 F.3d 1079, 2000 WL 729066, at *3 (5th Cir. 2000) (*per curiam*). The City's enforcement of its policies in this case involves no such "adverse action." The undisputed evidence shows that the City's library staff directed petitioners to use the free-speech zones and that the City's senior center staff directed petitioners to use the public sidewalk. On occasion, police were called to issue trespass warnings, but no arrests were made or charges brought.

Under Fifth Circuit precedent, this falls short of the requirement that of "adverse action" for purposes of a First Amendment retaliation claim. *See Colson v. Grohman*, 174 F.3d 498, 510 (5th Cir. 1999) (surveying circuit case-law on retaliation claims and concluding plaintiff failed to show an adverse action where she "was never arrested, indicted, or subjected to a recall election").

And contrary to the Union's unsupported argument, the fact that the Union got the necessary signatures to put all three initiatives on the ballot is relevant evidence on the retaliation claim. The City's argument here is not that the Union's petitioners "surrender their First Amendment rights upon their petition success." (ECF No. 39 at 18) The point is rather that in order to bring a *retaliation* claim, a "plaintiff must cross a certain threshold of harm." *Matherne*, 216 F.3d 1079, 2000 WL 729066, at *3. The Union's successful petition drive is additional evidence that the Union cannot cross this required threshold necessary to maintain a retaliation claim.

Second, the Union has offered no summary judgment evidence to show any retaliatory intent on the part of the City. Even indulging every reasonable inference in the Union's favor, the Mayor's position that the merits of the proposed ballot measures were bad public policy (ECF No. 26 ¶ 9), the posting of signs that contain legally accurate information about petitioning (Union MSJ Exhibit 1), and a proposal to re-locate a free speech area at one library branch so that petition solicitors would be "more visible" (Union MSJ Exhibit 2) are, individually or collectively, no evidence that the City "retaliated" against the Union by enforcing its pre-existing policies.

### The City's policies are not unconstitutionally vague.

In response to the City's explanation for why the policies at issue are not void for vagueness, the Union points only to the sign displayed by the City containing legally accurate information about soliciting and signing petitions, and an internal City email suggesting that a free-speech zone might be moved to a different location at a library branch. (ECF No. 39 at 19) Neither of these pieces of evidence in any way shows that the City's policies delegate "basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Union's vagueness claim therefore fails as a matter of law.

**The Union's evidentiary objections are unfounded.**

The Union raises several objections to the City's summary judgment evidence ([ECF No. 39 at 3–8](#)). These objections should be overruled, but even if some or all of them were sustained, the City's unobjected-to summary judgment evidence is sufficient to support the City's summary judgment on all points.

**Declaration of Dale McNeill.** The Union argues that paragraph 6 of McNeil's declaration is conclusory and not based on personal knowledge. But McNeill was personally involved in the drafting of the policy on the use of library property for freedom of expression purposes. ([MSJ Exhibit 1 ¶ 5)](#) He therefore has sufficient personal knowledge to describe the goals of the drafting process he participated in, and his testimony on those goals is in no way conclusory.

The Union challenges paragraph 7 as containing conclusory facts. McNeil describes the general characteristics of San Antonio public library users. ([MSJ Exhibit 1 ¶ 7](#)) McNeil has served as the Director of Public Services for the San Antonio Public Library for almost seven years. *Id.* ¶ 1. Who uses public library services is within his personal knowledge—not "unsupported conclusory facts." *Serna v. Law Office of Joseph Onwuteaka*, P.C., [614 Fed. App'x 146](#), 153 (5th Cir. 2015).

The Union objects to the final sentence of paragraph 8, where McNeill states that he has observed differences between how library and public sidewalks are used. This statement is McNeill's factual observation, not an impermissible conclusion of law.

The Union objects to paragraphs 9 and 12 on hearsay grounds. Neither are offered as evidence of the truth of the matter asserted and thus are not hearsay. Paragraph 9 describes the process that McNeil supervised and that the three Public Services Administrators implemented with regard to selecting the free speech areas at each branch. The testimony is not relied on to prove that each selected area had the characteristics described (i.e., unobstructed, sufficient size) but how the library administration directed the process. Similarly, the final sentence of paragraph 12 is not used to offer the testimony of City library branch managers, rather, this statement goes to McNeill's awareness of the underlying events. And in any event, the incidents he refers to are fully described in the unobjected-to business records offered as [MSJ Exhibit 2-2.](#)

**Declaration of Jessica Dovalina.** The Union objects to paragraph 6 of the Dovalina declaration. In paragraph 6, Dovalina describes how and why the Senior Center Political Activity Policy came about. These statements are sufficiently tied to her personal knowledge: Dovalina serves as the Assistant Director of the Department of Human Services and averred that she was "familiar with the policies governing the operation" of Comprehensive Senior Centers. (MSJ Exhibit 3 ¶ 2); *see also Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 763 (N.D. Tex. 2013) (concluding it was reasonable to infer that supervisor had personal knowledge of matters within her sphere of responsibility).

Next, the Union argues that paragraphs 11 and 13 contain conclusions of law concerning sidewalks and walkways. In paragraph 11, Dovalina identifies a sidewalk running along a public road as a public sidewalk. Meanwhile, in paragraph 13, Dovalina describes her observations on how the walkways outside the Northeast Senior Centers are used. Such statements are not impermissible conclusions of law but factual observations on how these sidewalks and walkways are used based on her personal experience. *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999) ("Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience.").

The Union lastly challenges portions of paragraphs 17 and 19 as hearsay. The contemporaneous statements relayed by senior-center staff to Dovalina, as a supervisor, qualify as "present sense impressions" within the exception to the rule against hearsay. *See* FED. R. EVID. 803(1) ("A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.").

## PRAYER

Defendant City of San Antonio, Texas prays that this Court grant the City's Motion for Summary Judgment and enter a take-nothing judgment on all claims brought by the Plaintiff San Antonio Firefighters' Association, Local 624. Defendant prays for such other and further relief to which it may show itself to be justly entitled.

DATED: June 7, 2019

Respectfully submitted,

G<small>RAVES</small>, D<small>OUGHERTY</small>, H<small>EARON</small> & M<small>OODY</small>, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas 78701
(512) 480-5600
(512) 480-5804 (facsimile)

By:     /s/William Christian
    William Christian
    Texas State Bar No. 00793505
    wchristian@gdhm.com
    Marianne W. Nitsch
    Texas State Bar No. 24098182
    mnitsch@gdhm.com

Deborah Lynne Klein
State Bar No. 11556750
deborah.klein@sanantonio.gov
O<small>FFICE OF THE</small> C<small>ITY</small> A<small>TTORNEY</small>
Litigation Division
111 Soledad Street, 10th Floor
San Antonio, TX 78205
(210) 207-8919 – Phone
(210) 207-4357 – Fax

A<small>TTORNEYS FOR</small> D<small>EFENDANTS</small>

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

    David M. Feldman
    Cris D. Feldman
    George W. Vie, III
    William X. King
    3355 West Alabama St., Suite 1220
    Houston, Texas 77098
    cris.feldman@feldman.law
    david.feldman@feldman.law
    will.king@feldman.law

    A<small>TTORNEYS FOR</small> P<small>LAINTIFF</small>

                      /s/William Christian